UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

LAURI YANCEY,                    )
                                 )
              Plaintiff,         )
                                 )
       v.                        )        No. 1:21-cv-02678-SEB-MG
                                 )
ASCENSION HEALTH ALLIANCE, INC., )
                                 )
              Defendant.         )

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Lauri Yancey ("Ms. Yancey") filed this lawsuit against her former em-

ployer, Defendant Ascension Health Alliance, Inc. ("Ascension"), alleging that it denied

her a promotion based on her age in violation of the Age Discrimination in Employment

Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq*., and that it terminated her employment in

retaliation for engaging in protected employment activities. Ascension moved for summary

judgment on both claims. For the reasons explained below, Ascension's Motion for Sum-

mary Judgment [Dkt. 44] is **GRANTED IN PART** and **DENIED IN PART**.

**I.      STANDARD OF REVIEW**

"A motion for summary judgment asks the Court to find that a trial is unnecessary

because there is no genuine dispute as to any material fact and, instead, the movant is en-

titled to judgment as a matter of law." *Hulse v. Martoccia*, No. 1:18-CV-02385-SEB-MPB,

2019 WL 3840319, at *1 (S.D. Ind. Aug. 15, 2019) (Barker, J.) (citing Fed. R. Civ. P.

1

56(a)). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247−48 (1986) (emphasis in original). Material facts are those that "might affect the outcome of the suit," and a dispute about a material fact is genuine when "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

Summary judgment is neither "a vehicle for resolving factual disputes" nor a means to a "paper trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). As such, in evaluating a summary judgment motion, the district court need not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Id.* Indeed, the court "cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder." *Hulse*, 2019 WL 3840319 at *1 (citing *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014)). "The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge*, 24 F.3d at 920 (citing *Anderson,* 477 U.S. at 249–50). When deciding whether a genuine dispute of material fact exists, the court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572 (7th Cir. 2021).

"Summary judgment practice requires the parties and courts alike to roll up their sleeves." *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020).

"Discerning the existence of a 'genuine dispute as to any material fact' can be tedious and time consuming." *Id.* "Today's Federal Rules recognize this and strive to ease the burden on courts by requiring a 'party asserting that a fact cannot be or is genuinely disputed' to support that position by citing 'particular parts of materials in the record' or, conversely, 'showing that the materials cited do not establish the absence or presence of genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.' " *Id.* (quoting Fed. R. Civ. P. 56(c)(1)). Our Local Rules further require parties to "submit factual statements to assist with identifying and isolating the disputed from the undisputed—all to help the court assess whether a particular claim should proceed to trial or instead can be resolved on the existing record." *Id.* "The aim is not to make busywork but instead 'to alert the court to precisely what factual questions are in dispute and point the court to the specific evidence in the record that supports a party's position on each of these questions.' " *Id.* (quoting *Waldridge*, 24 F.3d at 923).

Our Local Rules specifically require the party seeking summary judgment to designate a "Statement of Material Facts Not in Dispute" and the non-moving party to respond with a "Statement of Material Facts in Dispute" that "identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." S.D. Ind. Local Rule 56-1(b). "In addition to prohibiting the inclusion of any argument—which should be saved for briefing—the Local Rule requires that all asserted material facts be supported by specific citations." *Hinterberger*, 966 F.3d at 527 (citing S.D. Ind. Local Rule 56-1). "The movant's facts are admitted unless the non-movant 'specifically controverts' them in its factual statement, shows them to be

unsupported, or demonstrates that reasonable inferences can be drawn in its favor." *Id.* (quoting S.D. Ind. Local Rule 56-1).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Before turning to our recitation of the facts, we must first address Ms. Yancey's non-compliance with our Local Rules. Ms. Yancey's entire "Statement of Material Facts in Dispute" is set out in the following two sentences:

> Yancey identifies the following disputed material facts: (1) whether Ascension failed to promote Yancey to the HRBP position because of her age; (2) whether Ascension's stated reasons for failure to promote Yancey are pretextual; (3) whether Yancey was terminated because of her complaints of age discrimination; (4) whether Yancey communicated that she was vaccinated against COVID-19 in a meeting with Hannah Brown and Emily Connor; and (5) whether Yancey was given permission to take her mask off at the meetings with Brown and Connor. Specific disputed and undisputed facts are identified in Section II, which Yancey incorporates by reference.

Dkt. 48 at 1−2. For several reasons, Ms. Yancey's "Statement of Material Facts in Dispute" abjectly fails to comply with our Local Rules. First, Ms. Yancey includes not a single citation to the record, and our Local Rules require that "all asserted material facts be supported by specific citations." *Hinterberger*, 966 F.3d at 527 (citing S.D. Ind. Local Rule 56-1). Second, Ms. Yancey's first three "disputed material facts" are not actually facts, but rather, legal issues and arguments that our Local Rules explicitly prohibit from being identified as disputed material facts. Finally, despite Ms. Yancey foreshadowing that "[s]pecific disputed and undisputed facts would be identified in Section II," *i.e.*, her "Statement of Facts" section, she buries her disputed material facts inside a narrative of undisputed background material.

4

That "we must construe the facts in [Ms. Yancey's] favor . . . does not diminish her responsibility to present those facts in the manner dictated by local court rules." *Metropolitan Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002). Notwithstanding the added difficulty imposed by Ms. Yancey's non-compliance, we recite the facts below as follows.

### A.    Ms. Yancey's Employment at Ascension

Ascension, a non-profit Catholic healthcare corporation organized and incorporated under Missouri law, operates multiple places of business in Indianapolis, Indiana, including the St. Vincent Heart Center ("Heart Center"). Ms. Yancey started work at Ascension in 2003 as a recruiter for the Heart Center's Human Resource Department. Ms. Yancey worked in various positions within the Heart Center's Human Resources Department until August 2016, at which time the Heart Center underwent a restructuring and Ms. Yancey transitioned into the role of a Human Resources Business Advisor ("HRBA") for Ascension's Indiana market. HRBAs provided "support to frontline managers, directors, and market leaders." Dkt. 45 at 2. HRBAs implemented the national strategies developed by Ascension's Human Resources Business Partners ("HRBP"). Both HRBAs and HRBPs reported to a Human Resources leader, which was typically a Senior Director of Human Resources.

### B.    Ms. Yancey Applies for HRBP Opening

In February 2020, Laura Atkinson ("Director Atkinson") became Ascension's Senior Director of Human Resources for the Indiana market and began supervising the Indiana HRBAs. Because of the COVID-19 pandemic, Director Atkinson could not conduct one-on-one meetings with her new staff. Instead, she held regularly scheduled group meetings,

which Ms. Yancey usually attended. On June 4, 2020, Director Atkinson informed her team that Ascension was restructuring its Human Resources Department with the goal of "centraliz[ing] associate relations functions for a more consistent application of policies and practices for performance management, discipline, and labor relations." *Id.* at 3. To effectuate this goal, Ascension created the role of Associate Relations Specialist ("Specialist") and transitioned all HRBAs, including Ms. Yancey, into Specialist roles. Ascension also opened two new HRBP positions, which were considered more "strategic" roles than either the former HRBA positions or the new Specialist positions. *Id.* Director Atkinson communicated these developments to her team and announced that interested team members should notify her if they wanted to apply for the new HRBP positions. Ms. Yancey promptly informed Director Atkinson of her interest in interviewing for the role.

Director Atkinson interviewed four candidates for the HRBP positions: Jordan Hall ("Ms. Hall") (thirty-three years old), Monnie Pryor ("Ms. Pryor")[1] (forty-one years old), Maggie Steele ("Ms. Steele") (twenty-seven years old), and Ms. Yancey (fifty-two years old). Director Atkinson utilized Ascension's HRBP "Success Profile," an outline of the skills and attributes of an ideal HRBP, to develop interview questions that would elicit information about each candidate and assist her in identifying which candidates most closely matched the HRBP Success Profile. *Id.* at 4. On June 10, 2020, Director Atkinson

---

[1] Ms. Pryor also sued Ascension for age discrimination and retaliation, reciting many of the same background facts as Ms. Yancey does here. *See Pryor v. Ascension Health Alliance, Inc.*, 1:21-cv-2234-RLM-TAB, 2023 WL 1362542 (S.D. Ind. Jan. 31, 2023) (Miller, J.) (granting summary judgment to Ascension on claims of age discrimination and retaliation). Notwithstanding the specific factual differences between these two cases, we note the evidentiary overlap and cite the case where relevant.

conducted four hour-long interviews, using the same questions for each candidate. She noted her impressions of the candidates' responses, which responses provided Director Atkinson "insight into their experience, thought processes, how they approached their work, and who seemed best prepared to move into an HR Business Partner position." *Id.*

In her deposition testimony, Director Atkinson recalled how Ms. Hall (thirty-three years old) articulated her relevant experiences, "specifically shar[ing] . . . how she approached her work and outcomes," which gave Director Atkinson the impression that Ms. Hall had "a strategic mindset[,] [which] look[ed] at the big picture." Atkinson Dep. 38:13–39:1, dkt. 46-3. During Ms. Hall's interview, she also discussed collaboration and her interest in being a "credible partner to the business," which Director Atkinson felt were "important attributes for the role." *Id.*

As for Ms. Pryor (forty-one years old), Director Atkinson recalled that during her interview, Ms. Pryor "provided no examples of how she developed innovation or thought strategically." *Id.* Instead, Director Atkinson was struck by how Ms. Pryor had used "a particular process to discipline an associate," when the cited process was intended for development purposes, not disciplinary ones. *Id.* 40:8–42:7. Ms. Pryor also "described taking away the lunch break of associates who complained their workday was too long." *Id*. With this insight, Director Atkinson felt that Ms. Pryor's leadership approach was "problematic." *Id.* 41:2–3.

As for Ms. Steele (twenty-seven years old), Director Atkinson had already known Ms. Steele's background because Director Atkinson hired her. Ms. Steele learned organizational structure and design in a college HR immersion program, and she went on to

conduct strategic work in a number of HR areas. Ms. Steele also showed an interest in higher-level work. Ultimately, Ms. Steele's interview performance left Director Atkinson with the impression that Ms. Steele was "forward thinking" and could "drive the key priorities for the business." *Id.* 45:24–25, 46:24–25.

Ms. Yancey started her interview by asking if Director Atkinson thought she was ready for the HRBP role. This opening question, Director Atkinson recalled in her deposition, made her "question [Ms. Yancey's] preparedness." *Id.* 49:13–20. Throughout the interview, Ms. Yancey's anecdotes derived only from her former position at the Heart Center years earlier (rather than her more recent position at Ascension). *Id.* 47:24–48:5. Ms. Yancey also shared that she led the development of a clinical ladder to its final stages, but the business unit ultimately rejected it. *Id.* 48:6–12. When asked what she would have done differently, Ms. Yancey explained that she likely would not have discussed the project openly until it was complete. *Id.* 48:13–16. Director Atkinson's impression of Ms. Yancey's leadership approach was that "collaboration didn't exist" and that Ms. Yancey viewed project development as "a covert activity." *Id.* 48:17–21. Ultimately, Ms. Yancey's interview performance did not leave Director Atkinson with the sense that Ms. Yancey was ready for the HRBP role. *Id.* 51:20–22.

Director Atkinson relied on the candidates' interview performances to make her hiring decision. Reasoning that Ms. Steele and Ms. Hall were the best prepared for their interviews, Director Atkinson selected them for the two HRBP positions. Director Atkinson never reviewed the candidates' prior performance evaluations because, in her view, the HRBP role was different than the HRBA role and therefore not indicative of potential

success as an HRBP.[2] Director Atkinson did not solicit feedback from the candidates' prior supervisors,[3] nor did she consider candidates' tenure at Ascension, as she believed "tenure [wa]s not an indicator of how a person w[ould] perform in a new and different role." *Id.* 66:20–22. Except for Ms. Steele, whom Director Atkinson had hired as an HRBA, Director Atkinson "did not know what experience the candidates had before working for Ascension."[4] *Id.* Finally, Director Atkinson, who is three years younger than Ms. Yancey, testified that she did not know or consider the candidates' ages before reaching her decision. *Id.* 30:22–32:12.

Director Atkinson phoned Ms. Yancey on June 11, 2020, to share that she had not been selected for the HRBP position. Director Atkinson explained that if the HRBP role was something Ms. Yancey wanted to pursue in the future, she could facilitate new opportunities for Ms. Yancey to gain relevant experiences. Mses. Hall's and Steele's selection for the HRBP positions was announced to the rest of the HR team on June 12, 2020.

---

[2] If Director Atkinson had reviewed Ms. Yancey's prior evaluations, she would have learned that in 2016, 2017, and 2018, Ms. Yancey "exceed[ed] expectations." Yancey Dep. 62:18–67:1, dkt. 46-2. Ms. Yancey received a lower rating her 2019 review because of Ascension's new "increased expectation" for HRBAs to act as "strategic consultants." *Id.* 67:19–69:15. Ms. Yancey's then-supervisor noted that she nonetheless "fully [met] expectations" and "was on track" to meet the new strategic requirement, but her work in this area was not as strong as in traditional HRBA areas. *Id.*

[3] The three non-supervisory persons working in existing HRBP positions provided unsolicited feedback to Director Atkinson about the candidates. Dkt. 45 at 6 n.3. Though these HRBPs voiced support for Mses. Hall and Steele, Director Atkinson "did not rely on feedback in reaching her decision." Atkinson Dep. 23:11–24:21, dkt. 46-3.

[4] Ms. Yancey provided Director Atkinson with a resume, but, in Director Atkinson's own words, a "resume is just words on paper," whereas an "interview helps [her] understand the person." Atkinson Dep. 78:15–16, dkt. 46-3.

### C.    Ms. Yancey's Values Line Complaint & EEOC Charge

On July 7, 2020, Ms. Yancey contacted Ascension's Values Line complaint hotline, alleging that Director Atkinson selected "two of the least qualified" persons—Mses. Hall and Steele—for the HRBP positions. Dkt. 46-2 at 154. Ms. Yancey emphasized that the two individuals selected were "significantly younger" than she and that she "was passed over for a promotion by two younger women." *Id.* Her complaint also stated that, despite Ascension leaders' obligation to check-in with associates each quarter, four months had passed, and Director Atkinson had not yet met with her one-on-one. *Id.* at 153. Ms. Yancey further contended that Mses. Hall and Steele were "pre-selected" for the HRBP positions. *Id.* at 154. Ms. Yancey inferred this pre-selection because Mses. Hall and Steele had been absent from an HRBA meeting on June 8, 2020, during which the HRBA team learned about the new associate relations Center of Expertise ("CoE"). This, she contends, suggests that Director Atkinson had decided the new HRBPs prior to the interviews.

Laura Majewski ("Ms. Majewski"), the Associate Relations CoE Manager, investigated Ms. Yancey's Values Line complaint. A week after Ms. Yancey submitted her complaint, Ms. Majewski's first step in the investigation was to interview Ms. Yancey. During their conversation, Ms. Yancey stressed that she had more experience than Mses. Hall and Steele and that she felt Director Atkinson's offer to help her acquire more relevant experience was "extremely condescending," since she believed she was already sufficiently experienced. Dkt. 46-2 at 157. Ms. Yancey admitted, however, that she had never heard or witnessed anything to suggest that her department's hiring practices were discriminatory.

Ms. Majewski next interviewed Director Atkinson, who explained that she had se-
lected the associates who "came close to meeting the expectations of the success profile"
based on their interview performance. Dkt. 46-3 at 110. As for Ms. Yancey's other allega-
tions, Director Atkinson explained that she had not met individually with any of her direct
reports—including Ms. Yancey—due to the COVID-19 pandemic, and that Mses. Hall and
Steele were not "pre-selected" for the HRBP roles. Director Atkinson explained that "[a]s
part of an unrelated headcount process during the restructuring, [she] was asked to identify
two associates who might transition into the new HRBP roles." *Id.* Based on her "very
limited experience with them" and her "instinct around how [she] viewed them," Director
Atkinson identified Mses. Hall and Steele as potential HRBP candidates. Atkinson Dep.
83:25–84:13, dkt. 46-3. Because someone else thereafter used this survey as the basis for
performing a rough headcount, Mses. Hall and Steele were inadvertently left out of a "wel-
come to associate relations" meeting, prompting Ms. Yancey to assume—albeit with the
benefit of hindsight—that Mses. Hall and Steele had been selected for the HRBP positions
before their interviews. *See* dkt. 46-3 at 110.

Based on her investigation, Ms. Majewski concluded that Ms. Yancey's allegation
of discrimination was unsubstantiated because she uncovered no evidence to show that age
was a factor in Director Atkinson's decision-making process, which in fact was a decision
"about the application of knowledge," not years of experience or age. Majewski Dep. 29:1–
3, dkt. 46-4. Ms. Majewski's conclusion was shared with Vice President of Human Re-
sources Olivia Locklier ("Ms. Locklier") and Ascension's in-house counsel, Hannah
Brown ("Ms. Brown").

Ms. Yancey took a six-month leave of absence in July 2020, during which time period she filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Ascension discriminated against her based on her age in hiring for the HRBP positions.

During Ms. Yancey's leave of absence, Ascension conducted a reduction-in-force ("RIF"), which resulted in the elimination of nine Specialist positions. Ms. Majewski and Mr. Huckabee jointly decided which positions to eliminate and did not select Ms. Yancey for termination. Eventually she returned to work in January 2021. Because her prior supervisor, Mr. Huckabee, was promoted in February 2021, Ms. Yancey began reporting to Ms. Majewski, and Ms. Majewski moved Ms. Yancey into an opening on her team as an employee accommodations Specialist.

During a Specialist meeting in early 2021, Ms. Yancey recalled that "there was a discussion around something that had to do with an associate that would move forward with any kind of litigation against [an] employer." Yancey Dep. 191:4–7, dkt. 47-1. Ms. Majewski commented "Well, you know, some people are just like that." *Id.* 191:8–9. That remark caused Ms. Yancey to feel concerned about how Ms. Majewski, now her new supervisor, perceived Ms. Yancey's prior complaints of discrimination, but, so far as we know, no more came of Ms. Majewski's remark. *Id.* 191:10–12.

### D.    Ms. Yancey's Violation of Ascension's COVID-19 Policy

Ascension's COVID-19 policy required all employees, vaccinated and unvaccinated, to wear a mask while on Ascension property. In her position as an HR accommodations Specialist, Ms. Yancey not only had access to all of Ascension's applicable

COVID-19 policies, but she also assisted others in navigating their compliance with these policies. In mid-August 2021, Ascension updated its masking policy to apply to non-clinical office settings and in-person meetings. This updated policy provided that fully vaccinated individuals were not required to wear a mask while at the office. Ms. Yancey suggested that she "missed [the updated guidance] somehow when it went out," but she also acknowledged that, regardless of the updated masking policy, unvaccinated employees (of which she was one) were required to wear a mask. *Id.* 146:12–147:6, dkt. 46-2.

Around July or August 2021, Ascension emailed an announcement to all employees regarding Ascension's new COVID-19 vaccine requirement, which would take effect on November 12, 2021. The deadline to request a medical or religious exemption for the vaccine requirement was October 1, 2021. Ms. Yancey does not dispute that she was aware of the policy at the time and the process for requesting an exemption.

In September 2021, Ms. Yancey attended two in-person meetings with Ms. Brown along with outside counsel, Emily Connor ("Ms. Connor") to prepare for an upcoming deposition in an unrelated matter. The first meeting occurred on September 8 in a large conference room, and all participants were masked at the outset of the meeting. When the meeting began, Ms. Brown proposed that they all remove their masks. The parties dispute how Ms. Brown advanced this proposal, but, according to Ms. Brown, she had explained that if all participants were fully vaccinated, they had the option to conduct the meeting without wearing masks. Brown Dep. 42:8–14, 44:1–17, dkt. 46-6. Mses. Brown and Connor represented that they were vaccinated, and they recalled Ms. Yancey affirmatively stating that she too was vaccinated. *Id.* 47:5–10. According to Ms. Yancey, however, she never

expressly reported her vaccination status, and, since Ms. Brown initiated the removal of their masks, Ms. Yancey "assumed it was okay" to do so. Yancey Dep. 132:15–18, dkt. 47-1. Ms. Yancey also maintains that she "never communicated that she was vaccinated." *Id.* 133:1–9. At the second meeting on September 10, Mses. Yancey, Brown, and Connor again removed their masks.

On September 22, Ms. Brown attended a meeting concerning Ascension's vaccine policy and the process for requesting an exemption, during which Ms. Locklier explained Ascension's new "non-compliance" list that was used to track employees who had not yet submitted either proof of vaccination or an exemption request. During this meeting, Ms. Brown learned that Ms. Yancey's name was on this non-compliance list. Unsure whether Ms. Yancey had lied about her vaccination status or had simply not yet submitted proof of vaccination, Ms. Brown texted Ms. Connor seeking reassurance that Ms. Yancey had, as Ms. Brown recollected, affirmatively represented her vaccination status. Dkt. 47-20 at 1. Ms. Brown relayed this information to Ms. Locklier after Ms. Connor had confirmed Ms. Brown's memory. Nothing more came of this incident at that time.

By September 28, Ms. Yancey had submitted her religious exemption request, which Ascension approved on October 15. When Ms. Brown learned about Ms. Yancey's request on October 6, she reported to Ms. Locklier that Ms. Yancey had misrepresented her vaccination status and had removed her mask during the September meetings. Upon

Ms. Locklier's request, Mses. Brown and Connor provided statements setting forth their beliefs as to occurrences during the September meetings.[5]

On October 18, 2021, Ms. Locklier informed Ms. Majewski about the mask removal incident. Majewski Dep. 35:2–8, dkt. 46-4. When discussing the incident, Ms. Locklier indicated that Ms. Majewski "may want to address it," without suggesting how she expected Ms. Majewski to do so or that any prior investigation had already occurred. *Id.* 36:22–37:3. Unbeknownst to either Mses. Locklier or Majewski, Ms. Yancey initiated this present lawsuit the next day, on October 19, 2021. A few days thereafter, on October 21, Ms. Majewski met with Ms. Yancey (with Ms. Locklier present as a witness) to "find out what happened from her perspective," during which conversation Ms. Yancey confirmed that she was not vaccinated at the time of the September meetings but that she did not recall discussing her vaccination status. *Id.* 41:20–21. Ms. Majewski, who was aware of Ms. Yancey's July 2020 Values Line complaint, suspected that Ms. Yancey was avoiding answering questions by professing not to recall the conversation. Ms. Yancey's repeated response was that she did not recall misrepresenting her vaccination status, but Ms. Majewski believed that Ms. Yancey was being dishonest in saying that she did not recall.

Following the October 21 meeting, Ms. Yancey emailed Mses. Majewski and Locklier to add some remaining remarks. Although she had "assumed that masks were required,"

---

[5] When Ms. Brown learned about Ms. Yancey's vaccination exemption request, she realized that she could be a fact witness in the HR investigation, so she advised Ms. Locklier to receive legal advice from another Ascension attorney. Ms. Brown met with Ms. Majewski briefly on October 18, 2021, to discuss her statement, but she was not otherwise involved in this case. Majewski Dep. 40:10–41:10, dkt. 46-4.

Ms. Yancey professed that she was "genuinely not familiarized [sic] with the [COVID-19] protocols." Dkt. 47-15 at 1. And even though she "scoured all of the COVID and vaccine resources" on Ascension's website, she never located any policy requiring unvaccinated persons to remain masked. *Id.* While admitting that, in hindsight, she should have remained masked during the September meetings, Ms. Yancey also disclosed that the investigation into her mask removal "fe[lt] a bit like retaliation either due to" her July 2020 EEOC claim or her vaccination status. *Id.* at 2. In her email, Ms. Yancey made no mention of her age discrimination lawsuit, which she had filed just two days prior, but confirmed that Ms. Majewski had learned of Ms. Yancey's pending EEOC claim on October 21, 2021. To our knowledge, neither Mses. Locklier nor Majewski replied to Ms. Yancey's email. Ms. Locklier did, however, forward the email to Jennifer Richter, an Ascension employment attorney not otherwise involved in this litigation, and Ms. Majewski, writing that she was "not concerned with continuing to term." *Id.* at 1.

Based on the information she collected on October 18 and 21 and without consulting anyone else, Ms. Majewski came to believe that Ms. Yancey was being dishonest and thus posed a safety risk to herself and others in violating the mask policy. Majewski Dep. 46:3–12, dkt. 46-4. Accordingly, Ms. Majewski—the final and sole decision maker in this matter—terminated Ms. Yancey's employment on October 22, 2021.

### E.    This Lawsuit

Ms. Yancey initiated the present litigation on October 19, 2021—just two days before her termination—alleging that Ascension had discriminated against her on the basis of age, in violation of the ADEA. Dkt. 1. On April 11, 2022, Ms. Yancey amended her

16

complaint to add an ADEA retaliation claim for her firing after she had engaged in pro-tected activities (her July 2020 Value Lines complaint, her September 2020 EEOC charge, and her filing of this lawsuit in October 2021). Dkt. 31. On October 20, 2022, Ascension moved for summary judgment on both claims, which motion has been fully briefed and is now ripe for ruling. Dkt. 44.

## III.   LEGAL DISCUSSION AND DECISION

"The ADEA protects workers who are forty years old and older from discrimination based on age." *Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022) (citing *Tyburski v. City of Chi.*, 964 F.3d 590, 598 (7th Cir. 2020)). The ADEA also "prohibits employers from retaliating against an employee for opposing such discrimination." *Sinha v. Bradley Univ.*, 995 F.3d 568, 573 (7th Cir. 2021) (citing 29 U.S.C. §§ 631(a), 623(d)). Here, Ms. Yancey alleges that Ascension discriminated against her in violation of the ADEA by fail-ing to promote her because of her age and by terminating her in retaliation for making complaints of age discrimination. We discuss each of these claims in turn.

### A.   Failure-To-Hire/Promote

Ms. Yancey contends that Ascension discriminated against her based on her age when it selected younger candidates to fill the HRBP openings. To recover on a claim for age discrimination, a plaintiff must prove 'that age was the but-for cause of the challenged adverse employment action." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018). Phrased differently, "[it is] not enough to show that age was *a* motivating factor. The plain-tiff must prove that, but for [her] age, the adverse action would not have occurred." *Martino*

*v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 455 (7th Cir. 2009) (emphasis in original) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009)).

Plaintiffs may use the *McDonnell Douglas* "burden shifting analysis" to satisfy their burden of proof. *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017). Under this framework, a plaintiff in a failure-to-promote action must first establish a prima facie case that "(1) she was 40 or older, (2) she applied for and was qualified for the position sought, (3) she was rejected for the position, and (4) someone substantially younger than she was given the position." *Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 620 (7th Cir. 2001) (citation omitted). "If the plaintiff meets each element of her prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019) (citation omitted).

"Notably, the *McDonnell Douglas* framework is not the only method plaintiffs may use to prove their claim." *Id.* " '[It] is merely one way of culling the relevant evidence needed to demonstrate whether a reasonable factfinder could conclude that an employer engaged in an adverse employment action based on the plaintiff's' age or another proscribed factor." *Id.* (quoting *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018)). "However the plaintiff chooses to proceed, at the summary judgment stage the court must consider all evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse employment action *because of* her age." *Id.* (emphasis in original) (quoting *Skiba*, 884 F.3d at 720). "We therefore also assess the evidence 'as a whole,

18

rather than asking whether any particular piece of evidence proves the case by itself.' " *Id.* (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 756 (7th Cir. 2016)). "Both parties reference the *McDonnell Douglas* framework, so the court starts there and then looks to all the evidence cumulatively presented to determine whether a reasonable factfinder could conclude [Ms. Yancey was not] promoted because of her age." *Pryor v. Ascension Health Alliance, Inc.*, 2023 WL 1362542, at *5 (S.D. Ind. Jan. 31, 2023).

      1.   <u>Ms. Yancey's prima facie case.</u>

We find that Ms. Yancey has satisfied her burden of establishing a prima facie case of age discrimination. Ms. Yancey "satisfies the first element because [s]he is over forty years old and is therefore a member of the ADEA protected class." *McDaniel*, 940 F.3d at 368. The parties do not dispute that Ms. Yancey was qualified for the role, that she applied for the role and was ultimately rejected, or that two younger individuals were selected for the positions.

Although Ascension nominally challenges Ms. Yancey's prima facie case by including a heading that states "Yancey cannot state a *prima facie* case of age discrimination," it does not contest any of the four elements of her *prima facie* case. Instead, Ascension employs a lone—and legally unsupported—argument under this heading that "Yancey cannot offer sufficient evidence [that] Atkinson, who is a mere three years younger than Yancey, based her decision not to select Yancey for an HRBP role on Yancey's age." Dkt. 45 at 13. This argument is misconstrued and unavailing. First, the burden shifts to Ascension to articulate a legitimate, nondiscriminatory reason for the hiring decision only after Ms. Yancey has established a prima facie case; the rationale for the hiring decision does not

19

negate the prima facie case itself. Second, Ascension does not provide any support for its suggestion that a prima facie case could be negated by a decision-maker's proximity of age, namely that she is only a few years younger than the rejected candidate. Ms. Yancey has identified two cases that undermine Ascension's argument that the closeness of Director Atkinson's age somehow defeats Ms. Yancey's prima facie case.

In *Mills v. First Federal Sav. & Loan Association of Belvidere*, the Seventh Circuit considered whether a supervisor's comment "concerning the difficulty older workers face when looking for re-employment" constituted evidence of age discrimination. 83 F.3d 833, 842 (7th Cir. 1996). The employer himself was fifty-five—two years older than the plaintiff—and the Seventh Circuit noted these ages were "significant, though perhaps not dispositive." *Id.* The Seventh Circuit explained that:

> In light of [the supervisor's] age (two years older than the plaintiff), we think it unlikely that his remark to [the plaintiff] had any discriminatory undertones. Although persons of *any* age are capable of practicing age discrimination, we do not think that [the supervisor's] comment is evidence of such discrimination. Rather, it seems that [the supervisor] was trying to express empathy and understanding concerning the plaintiff's predicament.

*Id.* (emphasis in original).

In *Mangrum v. Morrison Timing Screw Co.*, the plaintiffs had presented sufficient evidence to defeat summary judgment, but the defendants nevertheless contended that they were entitled to summary judgment in their favor because the decision-maker was fifty-eight years old, which made him older than two of the four plaintiffs alleging age discrimination. No. 03 C 3891, 2004 WL 2581091, at *14 (N.D. Ill. Aug. 3, 2004). The district court there concluded that while the decision-maker's age was "noteworthy, it is not

20

dispositive, and again, [p]laintiffs have presented sufficient evidence to defeat summary judgment." *Id.* The district court relied on dicta in *Mills* that "[p]ersons of *any* age are capable of practicing age discrimination," *Mills*, 83 F.3d at 842 (emphasis in original), and concluded that "the fact that the decision maker was older than two of the [p]laintiffs will not prevent them from going to trial." *Mangrum*, 2004 WL 2581091, at *14.

We find these cases instructive—if Director Atkinson was, indeed, older than Ms. Yancey, that fact might be significant, but *not* dispositive. Ascension has provided no support for the suggestion that we should consider a decision-maker who is younger, but close in age, in our evaluation of an age discrimination claim. Thus, we conclude that Ms. Yancey has established a prima facie case, such that the burden now shifts to Ascension to articulate a legitimate, nondiscriminatory reason for the adverse employment action.

2.    Ascension's legitimate business reasons for not selecting Ms. Yancey

Ascension argues that it had legitimate business reasons for selecting Mses. Hall and Steele over Mses. Yancey and Pryor; to wit, they were better qualified for the positions. As our court recently explained in Ms. Pryor's age discrimination suit against Ascension, "[h]iring someone who the employer believes is better qualified for the position is a legitimate, nondiscriminatory reason." *Pryor*, 2023 WL 1362542 at *6 (citing *Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 893 (7th Cir. 2016)); *see also Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838 (7th Cir. 2009) (hiring better qualified person is a nondiscriminatory action). Indeed, "the qualifications for a position are . . . a business decision, one courts should not interfere with." *Pryor*, 2023 WL 1362542 at *5 (quoting *Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 621 (7th Cir. 2001)); *see also Baron v. City of Highland Park*, 195 F.3d 333,

341 (7th Cir. 1999) (explaining that courts do "not sit as a superpersonnel department that reexamines an entity's business decisions."). "Employers may base a promotion decision on subjective criteria, such as interview performance." *Pryor*, 2023 WL 1362542 at *6 (citing *Murray v. Golden Rule Ins. Co./United Health Corp.*, 23 F.Supp.3d 938, 953 (S.D. Ind. 2014)).

Here, Director Atkinson relied on her assessment of the candidates' interview performances against the backdrop of the HRBP Success Profile and concluded that Mses. Hall and Steele were the most qualified for the job. Director Atkinson has explained, without generating any disagreement, that she based her hiring decision on candidates' interview performances. During the interviews, Director Atkinson specifically listened for responses detailing each interviewee's "strategic mindset" and work approach. Atkinson Dep. 53:19–20, dkt. 46-3. Reflecting on Ms. Yancey's interview, Director Atkinson explained her doubts about Ms. Yancey's preparedness and strategic thinking, in part because Ms. Yancey had opened the interview by asking whether Director Atkinson believed "she was ready for the role." *Id.* 49:13–16. Ultimately, Mses. Hall's and Steele's interview performances were viewed as stronger, which led Director Atkinson to conclude that they were the best HRBP candidates. That an employer opted to select the better candidates for a promotion is a perfectly legitimate, non-discriminatory reason, and this, according to the evidence before us, is precisely what Ascension did. *Skiba*, 884 F.3d at 724.

### 3.    Ms. Yancey's demonstration of pretext

"If the employer supplies a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to produce evidence that the defendant's reason is pretext

22

for discrimination." *Chatman v. Bd. of Educ. of City of Chicago*, 5 F.4th 738, 746 (citing *Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 728 (7th Cir. 2013)). Director Atkinson's subjective evaluation of her interview performance is a permissible ground for a promotion decision, so the burden returns to Ms. Yancey to muster evidence of pretext.

"In this context, pretext 'means a lie, specifically a phony reason for some action.' " *Id.* (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995)). The Seventh Circuit has "also referred to pretext as an employer's efforts to cover their tracks or hide their real reason for not hiring an applicant." *Id.* (citing *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002)). The plaintiff can establish pretext by showing that the employer's proffered explanations: (i) were factually baseless; (ii) were not the actual motivations for failure to promote; or (iii) were insufficient to motivate the failure to promote. *Baron*, 195 F.3d at 341. "Yet, 'a showing of pretext alone is not enough; the plaintiff must also show that the explanations are a pretext for the prohibited animus.' " *Id.* at 747 (quoting *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 740 (7th Cir. 2013). Specifically, the plaintiff "must identify such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's asserted reasons that a reasonable person could find it unworthy of credence." *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711 (7th Cir. 2021).

Ms. Yancey advances three factual allegations to support her argument for pretext, but none are accompanied by any allegations of discriminatory animus nor by citations to supporting case law. Ms. Yancey first contends that Ascension's promotion decision was pretextual because Director Atkinson impermissibly pre-selected Mses. Hall and Steele for

the HRBP roles when she identified them as individuals who might not transition to an AR Specialist role before their interviews. Even inferring, as we must at the summary judgment stage, that Director Atkinson's oversight evinced preselection, Ms. Yancey must still demonstrate that Director Atkinson was motivated by discriminatory animus; this she has failed to do. An alleged pre-selection is not inherently pretextual, insofar as Ms. Yancey also neglects to identify any indicia of discrimination. *See, e.g.*, *Pryor*, 2023 WL 1362542, at *6; *Dew v. Guardsmark, Inc.*, No. 02 C 6156, 2003 WL 1626822, at *5 (N.D. Ill. Mar. 25, 2003) (alleged pre-selection without evidence of discriminatory purpose was immaterial).

Ms. Yancey also has not cited any case law to support her argument that pre-selection in and of itself amounts to pretext. In fact, it appears that most courts conclude otherwise. *See*, *e.g.*, *Jordan v. Summers*, 205 F.3d 337, 343–44 (7th Cir. 2000) ("perception" of pretextual preselection without supporting facts or explanatory details fails to defeat summary judgment); *Anderson w. Westinghouse Savannah River Co.*, 406 F.3d 248, 271 (4th Cir. 2005) (preselection alone is insufficient evidence for jury to reasonably conclude that employer's hiring explanation was pretextual); *Hiner v. McHugh*, 546 Fed.App'x 401, 407 (5th Cir. 2013) (preselection in and of itself does not demonstrate pretext unless supported with contention that "animus was the reason"); *Glass v. Lahood*, 786 F.Supp.2d 189, 224 (D.D.C. 2011) ("[T]here is nothing per se improper about 'pre-selection,' at least from the standpoint of Title VII. For evidence of preselection to be relevant, there must be indicia of discrimination attached to the preselection."); *Weaks v. North Carolina Dept. of Transp.*, 761 F.Supp.2d 289, 306 (M.D.N.C. 2011) (evidence of a mere "rumor" of preselection

"forecasts no admissible evidence" and fails to create a genuine dispute of material fact); *Dew*, 2003 WL 1626822, at *5 (N.D. Ill. Mar. 25, 2003) (summary judgment appropriate when plaintiff failed to allege discriminatory pre-text for employer's preselection).

Second, Ms. Yancey invokes Director Atkinson's testimony addressed in *Pryor*, the companion case adjudicated by another judge in this district, in which she described Ms. Yancey as a "good potential candidate" whose interview "examples were old." This testimony, Ms. Yancey contends, is evidence applicable here that age was the but-for cause of Director Atkinson's decision not to promote her. Director Atkinson's statements, however, "must be put in context." *Marnocha*, 986 F.3d at 722. Her statement, in full, states: "As far as red flags, the only thing with [Ms.] Lauri [Yancey was that] her examples were old. It seemed that she didn't do anything recent that would lead me to believe she is progressing and ready really for that next step." *Pryor v. Ascension Health Alliance, Inc.*, No. 1:21-cv-02234-RLM-TAB, dkt. 40-5 at 49:22–50:1 (S.D. Ind. Sept. 15, 2022). Though Ms. Yancey evidently regards Director Atkinson's statement as sufficient for a reasonable jury to find in her favor, she provides no law or analysis that supports this conclusion. The isolated use of the word "old" does not automatically create an inference of age discrimination, especially when Director Atkinson's statement, "even read out of context, is not age-related." *Pryor*, 2023 WL 1362542, at *6 (citing *Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 622 (7th Cir. 2001) (stray remarks unrelated to employment decision in question do not support inference of pretext); *see also Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F. 3d 1106, 1113 (7th Cir. 1998) (statements about "new blood" were unrelated to age bias and could not support finding of age discrimination).

Finally, Ms. Yancey argues that Director Atkinson claimed not to have considered candidates' experiences but then, inconsistently, suggested that Ms. Yancey needed more opportunities to gain the type of experience necessary for a good HRBP candidate. While it is true that Director Atkinson did not weigh candidates' "total years of experience," she certainly did consider their *qualitative* experience as evidence of their "strategic mindset." Atkinson Dep. 33:4–19, 53:14–17, dkt. 46-3. Though Ms. Yancey may disagree with Director Atkinson's opinion regarding the inadequacy of Ms. Yancey's prior experience, "she does not actually call into question [Director Atkinson's] sincerity." *Robertson v. Vilsack*, No. 15 C 587, 2016 WL 3443996, at *4 (N.D. Ill. June 23, 2016). Without evidence that Director Atkinson's stated explanations were a lie, Ms. Yancey has failed to establish pretext.

A holistic view of the evidentiary record does not suggest—either directly or indirectly—that Director Atkinson's HRBP decision was the product of age discrimination. Based on the facts as alleged, no reasonable trier of fact could find that Ms. Yancey's age was the but-for explanation of her non-selection for the promotion. Ms. Yancey cannot prevail against summary judgment when her "claims rest primarily on h[er] own perceptions of [Ascension's] motivations." *Rothman v. Emory University*, 123 F.3d 446, 453 (7th Cir. 1997). Accordingly, we grant Ascension's motion for summary judgment on Ms. Yancey's failure-to-promote claim.

### B.   Retaliatory Termination

Under the ADEA, it is unlawful for employers to retaliate against an employee who complains of discrimination. 29 U.S.C. § 623(d). Construing all facts in the plaintiff's favor

at this stage, Ms. Yancey must establish that "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two." *King v. Ford Motor Co.*, 872 F.3d 833, 841 (7th Cir. 2017). The plaintiff may rely on either direct or circumstantial evidence of a causal link "from which a jury may infer intentional discrimination." *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015); *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009) (evidence must show employer acted with retaliatory animus). Furthermore, this causal link must show that the plaintiff's "protected activity was the but-for cause of the alleged adverse action by the employer," *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). While a plaintiff need not "produce the equivalent of an admission of guilt by the defendant" to survive summary judgment, she must proffer "evidence from which a rational trier of fact could reasonably infer that the defendant had fired the plaintiff because the latter was a member of a protected class." *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994); *accord Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 761 (7th Cir. 2022) (plaintiff survives summary judgment motion so long as a "reasonable juror could conclude that there was a causal link between the protected activity or status and the adverse action").

The parties do not dispute that Ms. Yancey engaged in the following protected activities: her Values Line complaint in July 2020; her EEOC charge in September 2020; and her filing of this lawsuit in October 2021. Additionally, no party disputes that Ms. Yancey suffered an adverse employment action when Ascension terminated her. At issue here is whether Ms. Yancey established a causal link between the protected activity and the adverse employment action. Because Ms. Yancey has established a genuine dispute of

27

material fact regarding the cause of her termination, we deny Ascension's motion for summary judgment.

Causation may be proven by "circumstantial evidence, such as 'suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual.' " *Lewis*, 36 F.4th at 761 (quoting *Rozumalski v. W.F. Baird & Associates, Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019)). Each type of evidence may support judgment for the plaintiff—depending on the factual record as a whole—or various types may be used together. *Troupe*, 20 F.3d at 737.

Suspicious timing "will rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Often, "[s]uspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011). To "reveal discriminatory intent," *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 711 (7th Cir. 2017), such "temporal proximity must be 'very close.' " *Clark Cnty Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). In the Seventh Circuit, "very close" typically means "no more than a few days." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012). "Accordingly, for a suspicious-timing argument alone to give rise to an inference of causation, the plaintiff must demonstrate that 'an adverse employment action follows close on the heels of protected [activity], and the plaintiff must show that the person who decided

to impose the adverse action knew of the protected conduct.' " *Id.* (alterations omitted) (quoting *Lalvani v. Cook Cnty.*, 269 F.3d 785, 790 (7th Cir. 2001)).

While a long interval between a protected activity and an adverse employment action does not automatically defeat causation, mere "[s]peculation based on suspicious timing alone" will not "support a reasonable inference of retaliation." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) (three months insufficient); *e.g.*, *Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002) (four months insufficient). Similarly, an employer's "reasonable, non-suspicious explanations for the timing of [a] termination" may undermine an inference of causality, particularly when situated within a long interval. *Morgan v. SVT, LLC*, 724 F.3d 990, 998 (7th Cir. 2013); *see also Williams v. Pepsi-Cola General Bottlers, Inc.*, No. 06 C 6392, 2009 WL 1974316, at *8 (N.D. Ill. July 6, 2009) (collecting cases). A significant intervening event that occurs between a protected activity and an adverse employment action may also disrupt the chain of causation and incidentally defeat a causal inference based on suspicious timing. *Davis v. Time Warner Cable of Se. Wisconsin, L.P.*, 651 F.3d 664, 675 (7th Cir. 2011). Thus, in these instances, an employee must proffer additional evidence to survive a summary judgment motion.

Relying on suspicious timing, of course, also "presuppose[s] that the decisionmaker knew that the plaintiff engaged in statutorily protected activity, because if an employer did not know that the plaintiff made any complaints, it cannot be trying to penalize [her] for making them." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668–69 (7th Cir. 2006). Here, it is undisputed that Ms. Majewski was the sole decisionmaker regarding Ms. Yancey's termination and that she had no knowledge of the litigation pending before us prior to

Ms. Yancey's termination. Ms. Majewski did, however, have existing knowledge of Ms. Yancey's July 2020 Values Line complaint (indeed, she was the one who investigated Ms. Yancey's Values Line complaint). Just the day before Ms. Yancey's termination, Ms. Majewski also learned, by way of Ms. Yancey's October 21 email, about Ms. Yancey's EEOC charge. Majewski Dep. 66:5–9, dkt. 46-4 at 57. Accordingly, we need not contemplate whether Ms. Yancey's filing of this lawsuit factored into her termination.[6] *See Eaton v. J.H. Findorff & Son, Inc.*, 1 F.4th 508, 512–13 (7th Cir. 2021) (no triable issue if employer had no knowledge of protected activity). The only relevant protected activities are Ms. Yancey's Values Line complaint and her EEOC charge.

Ms. Yancey's July 2020 Values Line complaint was far too remote from her termination to support an inference of causation. Nearly thirteen months lapsed, which is well outside the "very close" threshold for suspicious timing. Moreover, Ms. Yancey has cited no other evidence establishing a causal link. Without evidence beyond a lengthy thirteen-month gap between Ms. Yancey's Values Line complaint and Ascension's decision to fire her, a fact-finder could not reasonably conclude that the two events are causally related to each other. *Sauzek*, 202 F.3d at 918–19.

The fifteen-month gap between Ms. Yancey's EEOC charge and her termination would similarly be too remote, but that conclusion ignores the undisputed fact that Ms. Majewski learned of the EEOC charge only one day before she decided to fire Ms.

---

[6] To the extent that Ms. Locklier participated in Ms. Majewski's decision-making process, Ms. Yancey has presented no evidence that Ms. Locklier knew of this present litigation.

Yancey.[7] The " 'suspicious timing' stopwatch starts when the employer first becomes aware of the employee's protected activity." *Jones v. Alpha Rae Personnel, Inc.*, 903 F.Supp.2d 680, 686 (N.D. Ill. 2012). Here, Ms. Majewski stated that she learned of Ms. Yancey's EEOC charge on October 21 and did not decide to terminate Ms. Yancey until October 22. When "an adverse action comes so close on the heels of a protected act," as it does here, we cannot conclude that no reasonable juror would find a causal link between the two. *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011); *see also Casna v. City of Loves Park*, 574 F.3d 420, 422–23 (7th Cir. 2009) (one-day period between employee's protected activity and adverse employment action sufficient to establish causation).

Ascension argues that the events leading to Ms. Yancey's termination began unraveling nearly a month earlier, when the masking violation occurred, and, because Ascension's "termination decision [was] already in motion," there can be no causal relation to Ms. Yancey's EEOC charge. *Harris v. City of Chi.*, 665 F.Supp.2d 935, 950 (N.D. Ill. 2009). While the record confirms that Ms. Brown raised questions about Ms. Yancey's vaccination status almost a month before Ms. Yancey's termination, there is no evidence that Ms. Majewski, the ultimate decisionmaker, became aware of the incident before

---

[7] Ms. Locklier's testimony regarding the sequence of events leading to Ms. Yancey's termination slightly muddies the timeline because she testified that Ms. Majewski decided to terminate Ms. Yancey on October 21—the same day that Ms. Majewski would have learned about the EEOC charge. Locklier Dep. 45:16–18, dkt. 47-5. Ms. Locklier's October 21 email to Ms. Majewski and Jennifer Richter disclosed that Ms. Locklier was not "concerned with continuing to term." Viewing the facts in Ms. Yancey's favor, this rendition of the timeline shortens the gap between Ascension's knowledge of Ms. Yancey's protected activity and the adverse employment action, thereby heightening the suspicious timing of Ms. Yancey's termination.

October 18, 2021, and, in the handful of days before Ms. Majewski learned of the EEOC charge, there is no showing that Ms. Yancey's termination was "proceeding along lines previously contemplated, though not yet definitively determined." *Breeden*, 532 U.S. at 272. In other words, Ascension has not demonstrated that Ms. Yancey's termination was the predetermined consequence of the masking incident. When Ms. Locklier informed Ms. Majewski of the incident, she imparted no expectations nor suggestions on how to address it. Ascension also has not argued that Ms. Majewski ever contemplated termination before she discovered Ms. Yancey's EEOC charge. *See id.* Rather, Ms. Majewski has maintained that her decision was not final until the day *after* she learned of Ms. Yancey's EEOC charge. On this record, we cannot conclude that a reasonable juror would overlook the suspiciousness of this timing.

We find that the record evidence, viewed as a whole and in the light most favorable to the non-moving party, could support a reasonable juror's conclusion that Ms. Yancey's termination was the product of retaliation. Ms. Yancey's termination occurred less than twenty-four hours after Ms. Majewski learned of the EEOC charge. Suspicious timing may "rarely" survive summary judgment, *Stone*, 281 F.3d at 644, but because Ms. Yancey's termination occurred so closely "on the heels" of a protected activity, we cannot comfortably conclude that "an inference of causation would be [un]reasonable," *Loudermilk*, 636 F.3d at 315. "[W]hether this inference is appropriate," however, is for a "jury, not a judge" to decide. *Id.*

We acknowledge that Ascension has its own nondiscriminatory reasons for terminating Ms. Yancey; specifically, that the mask incident caused Ms. Majewski to believe

Ms. Yancey had acted dishonestly and thus posed a safety risk. But this explanation belies a factual dispute about how the events leading to Ms. Yancey's termination unfolded. Ms. Yancey's masking violation "may have prompted the discharge, but so may have" Ms. Majewski's "intolerance of her complaint about discrimination." *Casna*, 574 F.3d at 427. Whether Ms. Yancey's protected activity was the but-for cause of her termination will ultimately require credibility determinations that cannot safely be made on the parties' written submissions. A jury is best equipped "to determine whether an employer's explanation is fishy enough to support an inference that the real reason must be discriminatory. *Loudermilk*, 636 F.3d at 315. Accordingly, we deny Ascension's motion for summary judgment on Ms. Yancey's retaliation claim.

## IV.   CONCLUSION

For the reasons detailed above, we **GRANT IN PART** and **DENY IN PART** Defendant's Motion for Summary Judgment. Dkt. 44. Summary judgment is **GRANTED** as to Plaintiff's ADEA age discrimination claim and **DENIED** as to Plaintiff's ADEA retaliation claim. The case shall proceed accordingly.

IT IS SO ORDERED.


Date:   9/28/2023

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Annavieve C. Conklin
DELANEY & DELANEY LLC
ACONKLIN@DELANEYLAW.NET

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Matthew R. Gutwein
DELANEY & DELANEY LLC
mgutwein@delaneylaw.net

Alan L. McLaughlin
LITTLER MENDELSON, P.C. (Indianapolis)
amclaughlin@littler.com

Ryan Joseph Sterling
LITTLER MENDELSON, P.C. (Indianapolis)
rsterling@littler.com